UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD JAMES GENNONE
and JOYCE E. FLOOD,

               Plaintiffs,

        v.                                     1:09-CV-968 (LEK/RFT)

A. J. ECKERT COMPANY, INC., et al.,

               Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

### I.      INTRODUCTION

      Presently before the Court is a Motion seeking summary judgment, pursuant to Federal Rule of Civil Procedure 56, in favor of Defendant Detroit Diesel Corporation ("DDC" or "Defendant") and dismissing all claims asserted against that party in the instant action.  Dkt. No. 9.  DDC is one of many Defendants named by Plaintiffs Richard J. Gennone and Joyce E. Flood in this case, a personal injury suit concerning asbestos exposure and mesothelioma.  This case comes before this Court following removal by Defendant from the Schenectady County Supreme Court on or about August 26, 2009.  See Dkt. No. 1.  Prior to removal, Plaintiffs filed an initial Complaint on May 26, 2009, an Amended Complaint on June 8, 2009, and a Second Amended Complaint on June 30, 2009.  The Second Amended Complaint added, *inter alia*, DDC as a Defendant, alleging that it engaged in the manufacture, sale or distribution of products containing asbestos and which caused

or contributed to Plaintiff Gennone's development of mesothelioma.  Second Amended Compl. at ¶ 7.

## II.    BACKGROUND

Plaintiff Richard Gennone alleges an array of injuries attributed to asbestos exposure over a period of years during employment at assorted industrial, manufacturing or shipping jobs.  This action seeks to hold liable an extensive list of enterprises that performed activities involving the asbestos products that are asserted as causes of Gennone's harms.  Joyce Flood, as the spouse of Gennone, alleges loss of consortium due to the asbestos-based injuries sustained by her husband.  First Compl. at ¶¶ 210-12 (incorporated in subsequent pleadings).  Among the enterprises named as Defendants, DDC is implicated in this action by Gennone's allegations that he was exposed to asbestos while working with Detroit Diesel engines and generators from 1944-46 and 1950-51.  See Memo. in Opp. at 2, Dkt. No. 14; see generally Nov. 30, 2009, Aff. of Thomas Lane ("Lane Aff."), Dkt. No. 9.

DDC seek summary judgment and dismissal of Plaintiffs' claims against them on the ground that the corporation did not exist during the period relevant for this action.  That is, DDC presents a history of the Detroit Diesel brand, from its time as a division of General Motors Corporation ("GM") to its current status as a wholly owned subsidiary of Daimler North America Corporation, a subsidiary of Daimler AG.  See Corporate Disclosure Statement, Dkt. No. 3.  In brief, DDC explains that the corporation was formed January 1, 1988 by acquiring assets of the Detroit Diesel Allison Division of GM; at the juncture, Penske Corporation and GM owned, respectively, 60% and 40% of the newly created corporation.  Aug. 24, 2009, Aff. of Shawn Jacque ("Jacque Aff.") ¶ 5, Dkt. No 9,

2

Ex. D.  Thereafter, in 1989, Penske obtained an additional 20% stake of DDC from GM, such that it became an 80% owner of the corporation.  Id. ¶ 15.  The remaining 20% held by GM was acquired by Daimler-Benz in 1993, when DDC became a publicly held company.  Id. ¶ 16.  In 2000, DaimlerChrysler, previously Daimler-Benz, obtained all stock in DDC.  When Daimler and Chrysler split apart in 2007, the resultant Daimler North America Corporation retained all of the shares of DDC, as is currently the case.  Id. ¶ 17.

As an additional dimension to DDC's company history, GM's Sales Agreement included provisions for GM to assign all liabilities for a range of matters, including those for products made prior to the sale of the division and formation of the corporation; relatedly, GM entered into an indemnification agreement in which GM committed to indemnify, defend and hold harmless DDC, its successors or assigns from costs and expenses stemming from claims or litigation against DDC concerning GM products prior to the sale.  Id. ¶¶ 10-11; see Attached Exhibits to Declaration A and B (Dkt. No. 9, #5-6).  The transaction also included a product responsibility agreement in which GM agreed to maintain insurance for product liability claims relating to GM products prior to the sale.  Jaque Aff. ¶¶ 12-13.  On July 16, 2009, however, the legal staff at GM, upon emerging from Chapter 11 bankruptcy as General Motors Company, notified corporate counsel at DDC that GM would cease to assume its obligations under the indemnification and product responsibility agreements.  Id. ¶ 19.

Based on these facts and their alleged legal application, DDC argues that it cannot be subject to liability for claims arising from GM Detroit Diesel machinery that Plaintiff worked with in the 1940s and 1950s.  Plaintiffs respond to Defendant's Motion by seeking discovery under Federal Rule of Civil Procedure 56(f) through a filing that contains neither a statement of material facts nor

a memorandum of law but, rather, is labeled as an affidavit, despite containing extensive legal

argument.  While such a filing is inconsistent with the governing local rules, see generally, L.R. 7.1,

the Court shall nonetheless reach the underlying merits of Defendant's Motion in this instance.

Plaintiffs assert that the "Gennone Estate cannot respond to DDC's motion.  Nor . . . does the Court

have sufficient information before it to rule upon [it]."  Memo in Opp. at 2.  Thus Plaintiffs'

opposition to Defendant's Motion, without expressly disputing any of the foregoing facts, seeks to

avoid summary judgment by showing why the circumstances warrant the Court's allowance of

additional time for Plaintiffs to undertake discovery.


III.    STANDARD OF REVIEW

        Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); Beard v. Banks, 548 U.S.

521, 529 (2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  A court must "'resolve

all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing the judgment.'"  Brown v. Henderson, 257 F.2d 246, 251 (2d Cir. 2001) (quoting Cifra v.

General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

        If the moving party meets its initial burden of demonstrating that no genuine issue of

material fact exists for trial, the nonmovant "must do more than simply show that there is some

4

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S.

574, 586 (1986) (citations omitted).  The nonmovant "must come forth with evidence sufficient to

allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted).  The

nonmoving party "may not rely merely on allegations or denials in its own pleadings;" bald

assertions unsupported by evidence are insufficient to overcome a motion for summary judgment.

FED. R. CIV. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins.

Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).


**IV.     DISCUSSION**

      DDC contends that the record before the Court establishes as a matter of law that it cannot

be held liable for the torts alleged by Plaintiffs under New York law governing corporate successor

liability.  Plaintiffs, in the absence of a statement of material facts and without specifically denying

the facts on which DDC rests its Motion, seek to show that issues of material facts may exist, for

which a continuance and discovery is warranted.

      Generally, successor liability is not permitted; only certain, limited sets of circumstances

allow a plaintiff to sue an existing corporation for tortious activity by its predecessor.  "A

corporation that purchases another corporation's assets is not liable for the seller's torts, subject to

four exceptions outlined in subject to four exceptions outlined in Schumacher v. Richards Shear

Co., 59 N.Y.2d 239 (1983)." Semenetz v. Sherling & Walden, Inc., 7 N.Y.3d 194, 196 (2006).

These four exceptions occur where: "1) [the successor] expressly or impliedly assumed the

predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the

purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is

entered into fraudulently to escape such obligations." <u>Schumacher</u>, 59 N.Y.2d at 245. The Court shall consider the application of each exception in turn.

First, there is no question that GM expressly assumed tort liability for Detroit Diesel products manufactured or sold prior to DDC's separation and incorporation. The sales agreement, indemnification agreement and product responsibility agreement all attest to such an arrangement. <u>See</u> Attached Exhibits to Declaration A, B, C (Dkt. No. 9, #5-6). Further, that GM defended asbestos claims relating to Detroit Diesel products dating from the GM era up until emerging from Chapter 11 bankruptcy in 2009 demonstrates that DDC, the successor corporation, was relieved of liability in practice. <u>Id.</u> Exhibit D. Thus, rather than indicate any possibility that DDC expressly or impliedly assumed its predecessor's tort liability, the record uniformly shows the very opposite agreement was entered into by and acted upon by GM and DDC.

Plaintiffs, nonetheless, argue that issues of material fact might exist, despite the present record. They assert an "entitle[ment] to explore whether there was any 'implied' assumption of liabilities, for example, through side agreements between the contracting parties particularly regarding asbestos litigation." Memo. in Opp. at 5. Such an implied assumption would mean that DDC, in some manner, indicated that it would assume pre-DDC asbestos liability, notwithstanding an express agreement to the contrary. Plaintiffs also claim that they "should be allowed to probe the specifics of the Indemnification Agreement, that is, what was the understanding of the parties, how the Indemnification Agreement has worked and why GM has now disavowed it." <u>Id.</u> at 6. Beyond reflecting speculation entirely untethered to any facts, Plaintiffs' conjectures simply do not make sense. The suggestion that DDC may have impliedly had a side agreement with GM to assume asbestos liability is, of course, inconsistent with the known facts concerning the liability

arrangement between GM and DDC.  Given this situation, it is not evident how the thoughts of the

parties on the agreements they reached has any relevance here; nor does GM's post-bankruptcy

refusal to continue to defend pre-DDC Detroit Diesel brand claims hold any mystery that might raise

an issue of material fact.

Second, the record shows that no consolidation or merger occurred between seller and

purchaser in the formation of DDC.  As an initial matter, no formal merger was executed by the GM

and DDC, as the Plaintiffs acknowledge.  Memo in Opp. at 2.  This second exception to the bar on

successor liability also applies to de facto mergers, where the parties do not effectuate a formal

merger but obtain a comparable result in practice.  While all of the following factors need not

necessearily be present to find that such a de facto merger was accomplished, New York courts look

to whether there is: "(1) continuity of ownership; (2) cessation of ordinary business operations and

the dissolution of the selling corporation as soon as possible after the transaction; (3) the buyer's

assumption of the liabilities ordinarily necessary for the uninterrupted continuation of the seller's

business; and (4) continuity of management, personnel, physical location, assets and general

business operation."  Van Nocker v. A.W. Chesteron, Co., 15 A.D.3d 254 (1st Dep't 2005).  It is

apparent from these criteria that DDC does not fall within the de facto merger exception.  There has

not been continuity of ownership, as GM never had a controlling share of DDC after the transaction

and soon ceased to have any ownership stake in DDC; GM continued to operate and was in no way

dissolved after DDC was formed; and DDC did not assume the liabilities of GM to continue the

operation of GM's business.  In other words, there is absolutely no indication that DDC and GM

consolidated or merged, and every indication to the contrary.  Plaintiffs, however, contend that they

"should be allowed to test every one of DDC's assertions by questioning the participants in the 1988

7

transaction before a finding can be made as to whether the 1988 transaction was/was not a de facto merger." Memo in Opp. at 8. The Court finds this argument to be without merit, as it is comprised of pure speculation that is implausible and contradicted by the record.

Third, and relatedly, it is clear that DDC is not a mere continuation of the selling corporation, GM. This "exception refers to corporate reorganization . . . where only one corporation survives the transaction; the predecessor corporation must be extinguished." Schumacher, 59 N.Y.2d at 245. As GM did not cease to operate after the transaction creating DDC, the mere continuation exception has no application here.

Lastly, the fourth exception permits successor liability where a successor corporation arose from a transaction entered into fraudulently in order for a predecessor to escape that liability. Plaintiffs argue with reference to asbestos claims that "[a]ttempting to get DDC out from under such huge, publicly reported, potential liabilities could have motivated the participants in the 1988 transfer. Thus, the fraud exception under Schumacher may be relevant." Memo. in Opp. at 9. On this basis, Plaintiffs seek to "explore whether the consideration received by seller GM was fair under the circumstances" and to "investigate through discovery whether intentional fraud . . . infected the 1988 transfer." Id. at 10. Of course, by their admission, "the Gennone Estate is not asserting that fraud motivated the 1988 transfer. The Gennone Estate does not know." Id. at 11.

The Court finds Plaintiffs' arguments to be wholly untenable. The record shows that not only did GM expressly retain responsibility for liability claims relating to pre-DDC Detroit Diesel products, but GM did in fact defend those claims until the 2009 post-bankruptcy notice to DDC. Thus, a most basic review of the limited facts before the Court unequivocally repudiates the stated basis for Plaintiffs' attempt to obtain discovery about the 1988 transaction forming DDC. As with

the previously discussed factors, there is neither an identifiable issue of material fact present nor the reasonable possibility that one would be revealed with additional, appropriate discovery.

Under provision (f) of Rule 56, a Court may decline to grant summary judgment if the non-moving party "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(f). In the Second Circuit, pursuant to Rule 56(f), a party claiming to be unable to produce evidence in opposition to a summary judgment motion must file an affidavit that demonstrates:

> 1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful.

Burlington Coat Factory Warehouse Corp. v. Esprit de Corp., 769 F.2d 919, 926 (2d Cir. 1985). "Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery 'if it deems the request to be based on speculation as to what potentially could be discovered.'" National Union Fire Ins. Co. v. Stroh Cos., 265 F.3d 97, 117 (2d Cir. 2001) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994)). While a "bare assertion that the evidence supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment, . . . a party against which summary judgment is sought must be afforded 'a reasonable opportunity to elicit information within the control of his adversaries.'" Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009) (citing Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) for the proposition that "summary judgment should not be granted against nondilatory party who has been 'denied reasonable access to potentially favorable information'").

Resolving all ambiguities and crediting all factual inferences that could rationally be drawn in favor of Plaintiffs, the Court finds that Defendant has demonstrated that no genuine issue of material fact exists for trial.  The burden thus shifts to Plaintiff to show that evidence exists by which a reasonable jury could find in their favor.  Rule 56(f) provides the Court discretion to not grant summary judgment where the non-moving party, Plaintiffs, can show that additional discovery is necessary to produce such evidence.  Critically, to avoid summary judgment, Plaintiffs must, *inter alia*, explain how the evidence they seek will create a genuine issue of material fact.  In view of the foregoing discussion on the Schumacher factors, Plaintiffs have failed to do so.  Their arguments in opposition to summary judgment and in support of a discovery allowance consist of extreme speculation and "metaphysical doubt, " Matsushita Elec. Indus. Co., 475 U.S. at 586 (1986), that is often belied by essential facts in the record that Plaintiffs have not denied.  Put differently, Plaintiffs do not provide any basis for additional discovery -- they do not allege the reasonable possibility of facts which would create issues of fact for trial.

Moreover, Plaintiffs do not sufficiently meet the other required elements of their Rule 56(f) showing.  In particular, no mention is provided of the efforts undertaken to locate the information which Plaintiffs purport to seek or why such efforts, if they were ever undertaken, were unsuccessful.  Indeed, while the facts that Plaintiffs imply they would seek is very broad and ill-defined, it would appear that much of the covered information exists in public records rather than the exclusive possession of Defendant.  Regardless, the Court has received no suggestion that Plaintiffs have undertaken discovery efforts in the months since this action was removed to federal court and no suggestion that they have been denied reasonable access to information by Defendant.  Rule 56(f) is not meant to delay summary judgment on merit-less claims.  Additional discovery is

not warranted, as is the case here, where non-moving Plaintiffs have failed to proffer any facts to support their claims, Defendant has met its burden for summary judgment, and Plaintiffs can only propose unlikely scenarios that would require their finding implausible or impossible facts. Accordingly, summary judgment in favor of Defendant is properly granted.

**V.      CONCLUSION**

Therefore, based on the foregoing, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that Plaintiffs' claims are **DISMISSED** with prejudice as against Defendant Detroit Diesel Corporation; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:      June 18, 2010
                    Albany, New York

Lawrence E. Kahn
U.S. District Judge